IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
WESTERN DIVISION

| | |
|---|---|
| ANGELA MARIE RENNIE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) No. 4:22-CV-00314-WJE |
| | ) |
| KILOLO KIJAKAZI, | ) |
| Acting Commissioner of Social Security, | ) |
| | ) |
| Defendant. | ) |

**ORDER**

Plaintiff Angela Marie Rennie seeks judicial review[1] of a final administrative decision of the Acting Commissioner of Social Security ("Acting Commissioner") denying her claim for disability insurance benefits ("DIB") under Title II of the Social Security Act ("SSA"), 42 U.S.C. §§ 401–434. For the reasons that follow, the Court reverses and remands the decision of the Acting Commissioner for further consideration and development of the record.

**I. Background**

Ms. Rennie protectively filed a claim for DIB on October 7, 2020. (AR 10). She alleged a disability onset date of April 23, 2020, due to depression, anxiety, degenerative disc disease, Hashimoto's thyroiditis, hypothyroidism, chronic fatigue syndrome, chorioretinitis due to ocular histoplasmosis, migraines, and radiculopathy sciatic nerve. (*Id.* 10, 287). Her claims were initially denied on February 3, 2021. (*Id.* 10). She filed a written request for hearing before an Administrative Law Judge ("ALJ"), which was held on December 15, 2021. (*Id.*).

---

[1] With the consent of the parties, this case was assigned to a United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(c).

On March 2, 2022, the ALJ denied Ms. Rennie's claim in a written decision. (*Id*. 7–21). The ALJ determined that although Ms. Rennie had severe impairments, including chronic fatigue syndrome, obesity, Hashimoto's thyroiditis, degenerative disc disease of the thoracic spine with possible compression fracture, degenerative disc disease of the lumbar spine, bilateral retinal neovascularization, headaches, deep vein thrombosis of the left lower extremity, degenerative joint disease of the left foot, major depressive disorder, and anxiety disorder, none of them met or exceeded a listed impairment. (*Id*. 13–14). She also determined that Ms. Rennie retained the residual functional capacity ("RFC") to perform light work with the following limitations:

> [The claimant can] lift and carry up to 10 pounds frequently and 20 pounds occasionally, stand and/or walk up to 4 hours in an 8-hour workday, and sit for up to 6 hours in an 8-hour workday. The claimant can never climb ladders, ropes or scaffolds, but can occasionally climb ramps and stairs, stoop, kneel, crouch, and crawl. She should avoid extreme cold weather, extreme heat, excessive vibrations, operational control of moving machinery, unprotected heights, and hazardous machinery. Due to her mental impairments, the claimant has the ability to concentrate, persist and remain on task and pace to perform simple, routine and repetitive tasks, which may involve multiple noncomplex[,] simple, routine and repetitive steps, tasks or instructions. The claimant can concentrate, persist, and remain on task and pace to adapt to work in an environment that is free of fast-paced production requirements and involves only simple, work-related decisions with few, if any, workplace changes. The claimant should have no public interaction, but can work around co-workers, but with only occasional interaction with coworkers and supervisors. She can have no more than frequent use of a computer screen.

(*Id*. 14–15). The ALJ found that although Ms. Rennie could not perform her past relevant work, she could perform work as a photocopy machine operator, shipping and receiving weigher, or routing clerk. (*Id*. 19–20).

Following the ALJ's decision, Ms. Rennie filed an appeal with the Appeals Council. (*Id*. 237–38). The Appeals Council denied her request for review, leaving the ALJ's decision as the final decision of the Acting Commissioner. (*Id*. 1–3). Because Ms. Rennie has exhausted all administrative remedies, judicial review is now appropriate under 42 U.S.C. § 405(g).

## II. Disability Determination and the Burden of Proof

The burden of establishing a disability as defined by the SSA in 42 U.S.C. § 423(d) rests on the claimant. *Kirby v. Astrue*, 500 F.3d 705, 707–08 (8th Cir. 2007). The SSA has established a five-step, sequential evaluation process for appraising whether a claimant is disabled and benefit-eligible. 20 C.F.R. § 404.1520; *see also Sloan v. Saul*, 933 F.3d 946, 949 (8th Cir. 2019). The Commissioner must evaluate:

> (1) whether the claimant is presently engaged in a substantial gainful activity;
> (2) whether the claimant has a severe impairment that significantly limits the claimant's physical or mental ability to perform basic work activities;
> (3) whether the claimant has an impairment that meets or equals a presumptively disabling impairment listed in the regulations;
> (4) whether the claimant has the residual functional capacity to perform his or her past relevant work; and
> (5) if the claimant cannot perform the past work, the burden shifts to the Commissioner to prove that there are other jobs in the national economy that the claimant can perform.

*Dixon v. Barnhart*, 353 F.3d 602, 605 (8th Cir. 2003) (citations omitted).

## III. Standard of Review

The Eighth Circuit requires the reviewing court to "determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole." *Baker v. Barnhart*, 457 F.3d 882, 892 (8th Cir. 2006) (quotation omitted). "Substantial evidence is less than a preponderance [of the evidence]," in that it merely requires that a reasonable person find the evidence adequate to support the Commissioner's decision. *Id.* (quotation omitted); *see also Cox v. Barnhart*, 345 F.3d 606, 608 (8th Cir. 2003).

The reviewing court must find deficiencies that significantly undermine the ALJ's determination to reverse and remand. *Draper v. Barnhart*, 425 F.3d 1127, 1130 (8th Cir. 2005). The court may reverse the Commissioner's decision only if it falls outside of the available zone of choice; a decision is not outside this zone simply because the evidence also points to an alternate

outcome. *Buckner v. Astrue*, 646 F.3d 549, 556 (8th Cir. 2011). Significant inaccuracies or incomplete analyses in the ALJ's opinion may, however, serve as a basis for reversal. *Draper*, 425 F.3d at 1130 ("While a deficiency in opinion-writing is not a sufficient reason to set aside an ALJ's finding where the deficiency [has] no practical effect on the outcome of the case, inaccuracies, incomplete analyses, and unresolved conflicts of evidence can serve as a basis for remand." (quotation omitted)).

## IV. Discussion

Ms. Rennie raises three issues in her appeal before this Court. She argues that substantial evidence does not support the ALJ's RFC decision because: (1) the ALJ did not properly evaluate the medical opinion evidence; (2) the RFC does not adequately account for her impairments; and (3) the jobs the ALJ found she could still perform conflicted with her RFC. (Doc. 15 at 8–22). The Acting Commissioner argues that the RFC decision is supported by substantial evidence because: (1) the ALJ properly evaluated the medical opinion evidence; (2) the RFC adequately accounted for her impairments; and (3) the jobs identified by the ALJ do not conflict with her RFC. (Doc. 16 at 4–18). The Court finds that substantial evidence does not support the ALJ's RFC decision because the ALJ did not properly evaluate some of the medical opinion evidence and the RFC does not adequately account for Ms. Rennie's vision impairments.

  A. *The ALJ did not properly evaluate some of the medical opinion evidence.*

"The Commissioner must determine a claimant's RFC based on all of the relevant evidence, including the medical records, observations of treating physicians and others, and [the claimant's] own description of [her] limitations." *Schmitt v. Kijakazi*, 27 F.4th 1353, 1360 (8th Cir. 2022) (quoting *Hensley v. Colvin*, 829 F.3d 926, 931–32 (8th Cir. 2016)). "A medical opinion is a statement from a medical source about what [the claimant] can still do despite [her]

impairment(s) and whether [she has] one or more impairment-related limitations or restrictions in" four functional areas defined by the statute. 20 C.F.R. § 404.1513(a)(2). "An ALJ must 'articulate . . . how persuasive [she] find[s] all of the medical opinions' in the record." *Healy v. Kijakazi*, No. 20-03304-CV-S-WBG, 2022 WL 987749, at *2 (W.D. Mo. Mar. 31, 2022) (quoting 20 C.F.R. § 404.1520c(b)). The ALJ "evaluate[s] the persuasiveness of medical opinions by considering (1) whether they are supported by objective medical evidence, (2) whether they are consistent with other medical sources, (3) the relationship that the source has with the claimant, (4) the source's specialization, and (5) any other relevant factors." *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022) (quoting *Bowers v. Kijakazi*, 40 F.4th 872, 875 (8th Cir. 2022)). "However, '[t]he first two factors—supportability and consistency—are the most important.'" *Id.* (quoting *Bowers*, 40 F.4th at 875). "[A]n ALJ's explanation for the weight given to a medical opinion must . . . be 'adequately articulated' and 'supported by substantial evidence.'" *Mary D. v. Kijakazi*, No. 21-1995-BRT, 2022 WL 2759117, at *8 (D. Minn. July 14, 2022) (citing *Thomas v. Kijakazi*, No. 4:20-CV-363-DDN, 2021 WL 3566621, at *7–8 (E.D. Mo. Aug. 12, 2021); *Dornbach v. Saul*, No. 4:20-CV-36-RLW, 2021 WL 1123573, at *11 (E.D. Mo. Mar. 24, 2021)).

Here, a consultative examination of Ms. Rennie was ordered and conducted January 9, 2021, by Dr. Michael Murphy at Midwest CES. (AR 3911–17). Dr. Murphy offered his opinion, stating:

> I generally observed the claimant to be able to grasp and turn a doorknob, pick up and grasp a pen and write a sentence . . . . The claimant was able to squat and rise from that position with mild difficulty. The claimant was able to rise from a sitting position without assistance and had no difficulty getting up and down from the exam table. The claimant was able to walk on heels and toes with mild difficulty.

(*Id.* 3914). Ms. Rennie contested the reliability of the consultative examination in correspondence to the ALJ. (*Id.* 395–97). She alleged that the exam lasted approximately five to ten minutes, and

Dr. Murphy's opinion included language used in virtually all the reports from Midwest CES. (*Id.* 395–96). The ALJ ultimately found Dr. Murphy's opinion unpersuasive. (*Id.* 18). Two state agency physicians, Dr. James Weiss and Dr. Harry Cole, rendered opinions after reviewing Ms. Rennie's medical records, including the consultative examination Dr. Murphy performed. (*Id.* 120–23, 133–35). Dr. Weiss specifically relied on Dr. Murphy's opinion, stating:

> Her hands/fingers appeared normal and she could grasp and turn a doorknob and pick up/grasp a pen to write a sentence. Claimant had mild difficulty squatting but could rise from a sitting position without assistance. She had no difficulty getting up/down from the exam table. Tandem walk was normal and she had mild difficulty walking on heels/toes.

(*Id.* 123). Dr. Harry Cole similarly relied on Dr. Murphy's evaluation. (*Id.* 134–35). The ALJ found both Dr. Weiss' and Dr. Cole's opinions generally persuasive. (*Id.* 18).

The Court finds that the ALJ's evaluations of Dr. Weiss' and Dr. Cole's opinions are not supported by substantial evidence. While the ALJ addressed the supportability and consistency of Dr. Weiss' and Dr. Cole's opinions with some of the overall medical evidence, she failed to adequately resolve an apparent inconsistency. (*See id.*). Mainly, that she found Dr. Weiss' and Dr. Cole's opinions persuasive, while both opinions relied on Dr. Murphy's findings, which the ALJ ultimately found unpersuasive. *Cf. Burnett v. Kijakazi*, No. 4:20-CV-968-NAB, 2022 WL 4130792, at *4 (E.D. Mo. Sept. 12, 2022) (The court held that when the ALJ found a medical opinion persuasive and used it to formulate the claimant's RFC, but the medical opinion relied on findings from a consultative exam that was not included in the record, remand was appropriate). Multiple courts have also taken issue with the consultative examinations performed by Midwest CES, as allegations of fraud have surfaced. *See Norah v. Kijakazi*, 4:20-CV-00963-BP (W.D. Mo. Apr. 15, 2022); *Housewirth v. Kijakazi*, 5:21-CV-06080-MDH (W.D. Mo. July 18, 2022); *Elwell v. Kijakazi*, 4:21-CV-00704-MDH (W.D. Mo. July 18, 2022); *Gatlin v. Kijakazi*, 4:21-CV-00421-

DPR (W.D. Mo. Sept. 21, 2022). Given these holdings and the conflict in the ALJ's evaluation of the medical opinions, this court reverses and remands this issue for the ALJ to resolve.

The Court does not find that the ALJ erred when she failed to evaluate Dr. Diane Voss' and Nurse Practitioner Michelle Guinta's statements as she would medical opinions. Dr. Voss' statement is a letter concluding that Ms. Rennie's military service exposed her to perfluorooctanoic acid ("PFOA"), which likely contributed to some of her impairments. (AR 1194). The letter does not detail how these impairments may impact Ms. Rennie's ability to work. (*See id.*). Thus, the letter does not qualify as a medical opinion and the ALJ was not obligated to evaluate it as one. *See* 20 C.F.R. § 404.1513(a)(2). Similarly, Nurse Practitioner Guinta's statement is contained within records of Ms. Rennie's treatment. (AR 1905–12). The records state that Nurse Practitioner Guinta provided her with compression hose and encouraged her to elevate her legs when sitting. (*Id.* 1907). Once again this does not constitute a medical opinion because it does not detail what Ms. Rennie could still do despite her impairments. *See* 20 C.F.R. § 404.1513(a)(2). The ALJ did not err when she did not evaluate Dr. Voss' or Nurse Practitioner Guinta's statements as medical opinions.

  B. *The RFC did not adequately account for some of Ms. Rennie's impairments.*

"The RFC must (1) give 'appropriate consideration to all of [the claimant's] impairments,' and (2) be based on competent medical evidence establishing the 'physical and mental activity that the claimant can perform in a work setting.'" *Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011) (quoting *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996)). Additionally, "'at least some' medical evidence must support the ALJ's RFC determination." *Wildman v. Astrue*, 596 F.3d 959, 969 (8th Cir. 2010) (quoting *Lauer v. Apfel*, 245 F.3d 700, 704 (8th Cir. 2001)).

This Court finds that the RFC does not adequately account for Ms. Rennie's vision impairments. The ALJ found that Ms. Rennie's bilateral retinal neovascularization was a severe impairment, "treated with IV injections." (AR 16). The ALJ also stated that her visual acuity was corrected with glasses, and she was still able to drive. (*Id.*). The ALJ then concluded that treatment for her condition was effective without citing to Ms. Rennie's medical records. (*Id.*). The ALJ used this finding to formulate Ms. Rennie's RFC, which included that she could use a computer screen not more than frequently. (*Id.* 15). The ALJ erred by not supporting her finding that treatment was effective for Ms. Rennie's vision issues and thereby only caused limitations in her computer screen use. *Partee*, 638 F.3d at 865. The medical records instead indicate that her eye exams were consistently abnormal, she reported eye pain and impaired vision, and her vision issues impacted her ability to drive. (*See* AR 48, 1375, 1383, 1387, 1394, 1398, 1404, 1406, 1410, 1414, 1419, 1423, 1425, 1427, 1434, 3943, 4000). Ms. Rennie also reported that her vision impairments were worsening. (*Id.* 49). The Court reverses and remands this issue for the ALJ to support this portion of the RFC with medical evidence. *See Noerper v. Saul*, 964 F.3d 738, 746–47 (8th Cir. 2020) ("[The Court] does not suggest that an ALJ must in all instances obtain from medical professionals a functional description that wholly connects the dots between the severity of pain and the precise limits on a claimant's functionality. Something, however, is needed.").

The ALJ did adequately account for Ms. Rennie's left shoulder impairment, chronic inflammatory condition, and ability to stand and walk in her RFC. The ALJ found that her left shoulder impairment was non-severe, citing to x-rays that showed only minor findings. (AR 13). Ms. Rennie's RFC limited her to lifting no more than 20 pounds occasionally, which adequately accounts for her non-severe shoulder impairment. (*Id.* 14). Her chronic inflammatory condition was never definitively diagnosed and evidence of functional limitations that were the direct result

of this condition were not well-documented. The ALJ also found that Ms. Rennie could "stand and/or walk up to 4 hours" a day, which was supported by Ms. Rennie's history of back pain managed with conservative treatment, treatment notes indicating that she retained normal strength in her lower extremities, and Ms. Rennie's daily activities, which included cleaning, shopping, and going to church. (*Id.* 14–15, 1747, 3817, 3831, 4144). Thus, the ALJ adequately accounted for some of Ms. Rennie's limitations in her RFC.

### C. *The jobs identified by the ALJ do not conflict with Ms. Rennie's RFC.*

"If the claimant establishes an inability to do her past relevant work, . . . '[t]he Commissioner must then prove . . . that other work exists in substantial numbers in the national economy that the claimant is able to perform[,]'" using the Dictionary of Occupational Titles ("DOT"). *Goff v. Barnhart*, 421 F.3d 785, 790 (8th Cir. 2005) (quoting *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004)). "[T]he DOT's definitions 'are simply generic job descriptions that offer the approximate maximum requirements for each position, rather than their range . . . .'" *Thomas v. Berryhill*, 881 F.3d 672, 677 (8th Cir. 2018) (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)). Further,

> [m]any definitions contain one or more sentences beginning with the word "May". They describe duties required of workers in this occupation in some establishments but not in others. The word "May" does not indicate that a worker will sometimes perform this task but rather that some workers in different establishments generally perform one of the varied tasks listed.

*See* 1 *Dictionary of Occupational Titles*, at xxi (4th rev. ed. 1991).

This Court finds that the jobs the ALJ identified that Ms. Rennie could perform do not conflict with her RFC. Photocopy machine operators "may receive payment for duplicate copies." *Id.* 207.685-014, at 177. This does not conflict with the ALJ's RFC finding that Ms. Rennie may not interact with the public because this is a duty that is not required of all photocopy machine

operators, but may appear only in some workplaces. (AR 14–15). Similarly, a routing clerk "[m]ay be designated . . . as Conveyer Belt Package Sorter (retail trade)," which is considered production-based work. 1 *Dictionary of Occupational Titles* 222.687-022, at 204 (4th rev. ed. 1991). This again does not conflict with Ms. Rennie's RFC that she cannot work in environments with fast-paced production requirements because this work will only appear in some workplaces. (AR 14). Given that the DOT describes the maximum requirements for each position, this Court does not find a conflict with the jobs the ALJ identified and Ms. Rennie's RFC. *Thomas*, 881 F.3d at 677. Further, even if the shipping and receiving weigher occupation requires problem-solving with concrete variables and is characterized by fast-paced or production-quota work that exceeds Ms. Rennie's RFC, there are still a significant number of jobs she can perform in the national economy, including photocopy machine operator (19,880 positions exist nationally) and routing clerk (73,960 positions exist nationally). 1 *Dictionary of Occupational Titles* 222.387-074, at 202 (4th rev. ed. 1991); (AR 20). Thus, there is no conflict with the jobs the ALJ identified and Ms. Rennie's RFC.

## V. Conclusion

For the reasons set forth herein, the Court finds the Acting Commissioner's determination that Ms. Rennie was not disabled is not supported by substantial evidence in the record. The decision is reversed and remanded for further consideration and development of the record.[2] Judgment shall be entered in accordance with this Order.

Accordingly,

---

[2] If the Acting Commissioner's decision is reversed, the case should ordinarily be remanded for further proceedings "out of our abundant deference to the ALJ." *Buckner v. Apfel*, 213 F.3d 1006, 1011 (8th Cir. 2000) (quotation omitted). An immediate finding of disability is warranted only "if the record overwhelmingly supports such a finding." *Id.* (citation and quotation omitted).

IT IS, THEREFORE, ORDERED that the decision of the Acting Commissioner is reversed and remanded for further consideration and development of the record, as set forth herein.

Dated this 4th day of January 2023, at Jefferson City, Missouri.

*Willie J. Epps, Jr.*

Willie J. Epps, Jr.
United States Magistrate Judge